1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11   MUHAMMAD KHAN,                          Case No. 20-cv-03086 BLF (PR)

                  Plaintiff,
12                                           **ORDER GRANTING MOTION FOR**
                                             **SUMMARY JUDGMENT**
13        v.

14   M. PAYTON, et al.,

15                  Defendants.

16                                           (Docket No. 72)

17

18        Plaintiff, a state prisoner, filed the instant *pro se* civil rights action pursuant to 42

19   U.S.C. § 1983 against an officer at San Quentin Rehabilitation Center[1] ("San Quentin").

20   Dkt. No. 1.[2]  The first amended complaint is the operative complaint in this matter.  Dkt.

21   No. 18 ("FAC").  Finding the FAC stated cognizable claims, the Court ordered the matter

22   to proceed against Defendants Correctional Officers Payton and Healy.  Dkt. No. 52.

23        Defendants filed a motion for summary judgment under Federal Rule of Civil

24   Procedure 56, on the grounds that Plaintiff's claims fail on the merits, and they are entitled

25

26   [1] At the time Plaintiff filed this action, it was known as San Quentin State Prison.

27   [2] All page references herein are to the Docket pages shown in the header to each document
     and brief cited, unless otherwise indicated.
28

to qualified immunity.  Dkt. No. 72.[3]  Plaintiff did not file an opposition although given extensive time (over eight months) to do so.  Dkt. No. 101.  However, Plaintiff's FAC is verified and therefore may be treated as an opposing affidavit.[4]  Dkt. No. 18 at 25.

For the reasons discussed below, Defendants' motion for summary judgment is **GRANTED.**

## DISCUSSION

I.    <u>Statement of Facts</u>[5]

A.    <u>Ramadan Meals</u>

From March 2018 through June 2018, Plaintiff was housed at San Quentin's Reception Center ("RC"), until he was transferred to Avenal State Prison.  Dkt. No. 18 at 7, ¶ 6.  According to Plaintiff, unlocks in RC only occur for very specific reasons such that inmate movement is limited to the following: shower and yard recreation twice a week, once a month commissary access, daily7 breakfast/dinner movement, and individual medical appointments.  *Id.* at ¶ 9; *see also* Tartaglio Decl., Ex. A (Pl.'s Dep.) at 19:7-14

---

[3] In support of their motion, Defendants provide the declaration of their counsel, Deputy Attorney Anthony J. Tartaglio, with the following exhibits: (1) excerpts from Plaintiff's deposition (Ex. A); (2) a copy of a Senior Legal Analyst's explanation of her search of the database of government claims filed against the State of California (Ex. B); (3) copy of Claim # 18008169, which alleges that prison employees lost Plaintiff's property (Ex. C); (4) a copy of Claim # 19006233, which alleges that prison employees failed to protect Plaintiff from an attack by another inmate (Ex. D); and a copy of Claim # 200101620, which alleges "a 6 hour molestation of [Plaintiff's] property" (Ex. E).  Dkt. No. 72-1.

[4] A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge); *see also Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir. 1998) (treating allegations in prisoner's verified amended complaint as opposing affidavit).

[5] Because no opposition has been filed, the Court accepts Defendants' statement of facts, unless indicated that facts are in dispute with Plaintiff's verified complaint.

United States District Court
Northern District of California

1  (RC inmates released for mealtimes).

2  Plaintiff is a Muslim who has been practicing for several years.  *Id.* at ¶ 12.  In order

3  to maintain a halal diet, Plaintiff obtained a religious diet card on April 20, 2018.  *Id.* at ¶

4  17.

5  In 2018, Ramadan began around May 15 and ended around June 16.  Dkt. No. 72 at

6  10, fn. 1.  During Ramadan, Plaintiff was to be let out of his cell around sundown so he

7  could go to an office to pick up a package containing that night's dinner and the next

8  morning's breakfast.  Pl.'s Dep. at 21:22-22:8; Dkt. No. 18 at 19, ¶ 20.  The officers had a

9  list of inmates who were participating in Ramadan.  Pl.'s Dep. at 25:4-11.  At the start of

10  Ramadan, Plaintiff recalls being called over the intercom to get his meal "around 2000";

11  Defendant Healy unlocked Plaintiff's door so he could go pick it up.  Dkt. No. 18 at 19, ¶

12  19.  Over the course of Ramadan, Plaintiff would not go to breakfast or dinner but wait to

13  pick up his meals at night when it was announced over the intercom and the officer

14  unlocked his cell door.  *Id.* at ¶ 22.

15  On June 8, Plaintiff felt sick so he ate a dinner meal during the daytime.  Pl.'s Dep.

16  at 27:13-17 ("I just remember that I felt very sick and I could not fast.  So I had to drink

17  water and eat during that day to kind of get my health back.  And I let the officer know that

18  was unlocking the doors that I will be going to dinner and I was not fasting that day.");

19  Dkt. No. 18 at 10, ¶ 24.  That evening, when Plaintiff when to get his Ramadan meal for

20  the next morning, he was told that none were available.  *Id.* at 28:1-13.  Plaintiff did not eat

21  the following morning.  *Id.* at 28:17-22.

22  On June 11, 2018, Defendant Healy unlocked Plaintiff's door at night and told him

23  to get his meals.  Dkt. No. 18 at 11, ¶ 28.  Plaintiff had remained in his cell all day and had

24  not eaten anything or had any water.  *Id.*  When he went to the office, Plaintiff saw that one

25  of the bags on the desk had his name on it.  *Id.*  When Plaintiff asked for his meals,

26  Defendant Payton refused to give it to him.  *Id.* at ¶ 29.  Defendant Payton told him that

27  "you're not getting your meal anymore."  *Id.* at ¶ 30; Pl.'s Dep. at 33:1-8.  Despite

28  3

Plaintiff's protestations, Defendant Payton refused to give him the meals. *Id.* at 33:13-18.

When Plaintiff returned to his cell, another inmate had left food outside to help Plaintiff during his fast. Dkt. No 18 at 11, ¶ 33. However, Defendant Healy blocked Plaintiff from the food, and locked him back into the cell. *Id.* at ¶ 34. When Plaintiff asked her to retrieve the food, Defendant Healy stated, "Don't bitch at me about it." *Id.*

The next day, Plaintiff was summoned to the office over the intercom by Defendant Payton. Dkt. No. 18 at 12, ¶ 36. Plaintiff was again told by Defendant Payton that he was not getting his meals. *Id.* at ¶ 38. Plaintiff informed Defendant that he had not been let out all day and had not eaten nor drank. *Id.* Defendant Payton told him that he had "signed a contract." *Id.* at ¶ 39; Pl's Dep. at 38:2-12. She added that "she had never heard of people missing and making up the day of fasting." *Id.* at 38:12-13. Although Plaintiff attempted to persuade Defendant that he could miss a day of Ramadan fasting if he atoned for it in some other fashion, Defendant Payton was not receptive to his arguments. *Id.* at 39:1-10. Plaintiff was not given a meal for that evening or the following morning. *Id.* at 39:14-17.

According to Plaintiff, "[Defendant] Healy's involvements, as it's stated in the complaint, would be denying me meals altogether, in that she would not unlock my door the days that she knew that Ms. Payton or custody staff at San Quentin State Prison and just the defendants altogether were not going provide me Ramadan bags or Ramadan meals." Pl.'s Dep. at 41:8-14. "Her involvement would also be when she knew that I did not go to breakfast or dinner, that I was being denied meals, she would at least offer me some sort of nourishment or to be able to say, hey, would you like to go to dinner, would you like to go to a meal, because we're not going to give you these Ramadan bags. In lieu, she kept the door locked." *Id.* at 41:15-21. Defendant Healy also prevented other inmates from giving some of their food to Plaintiff. *Id.* at 42:8-13; Dkt. No. 18 at 12, ¶ 42.

Plaintiff suffered from hunger pains, emotional distress, and humiliation "among other damages." Dkt. No. 18 at 12-13, ¶ 45. He does not claim any physical injury other than hunger pains. Pl.'s Dep. at 76:18-77:7. Plaintiff does not recall if he lost weight as a

result of missing meals.  *Id.* at 78:19-21.

In summary, Plaintiff did not eat for about 24 hours from June 8 to June 9.  Pl.'s Dep. at 46:13-16.  And on June 11 and June 12, Plaintiff did not eat for about a two-day period.  *Id.* at 46:21-23.  He was transferred to another prison early in the morning on June 13.  *Id.* at 46:24-47:5; Dkt. No. 18 at 13, ¶ 46.[6]

### B.   Plaintiff's Claims

Plaintiff claims that Defendants imposed a substantial burden on the exercise of his religion without relation to legitimate penological interests.  Dkt. No. 18 at 15, ¶ 61.  Plaintiff also claims that Defendants actions or omissions were not the least restrictive means of furthering compelling government interests and did not have only *de minimis* impact on his free exercise rights.  *Id.* at ¶¶ 62-63.  He also claims that Defendants' actions/omissions were clearly arbitrary and unreasonable, and had not substantial relation to health, safety, morals, or general welfare, nor was there any interest in order, security, and efficiency.  *Id.* at ¶ 74.  Lastly, Plaintiff claims Defendants deprived him of a basic human need.  *Id.* at ¶ 84.

Based on Plaintiff's allegations, the Court found the FAC stated cognizable claims under the First Amendment based on the denial of Ramadan meals necessary for the free exercise of Plaintiff's Muslim religion, and under the Eighth Amendment for the deprivation of food.  Dkt. No. 5 at 3.  The Court also found the FAC stated a cognizable due process claim based on the arbitrary denial of Ramadan meals by Defendant Payton.  *Id.*  The Court exercised supplemental jurisdiction over Plaintiff's state law claims for intentional infliction of emotional distress and negligent hiring/training/supervising.  *Id.*

## II.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show

---

[6] Plaintiff alleges further misconduct at the new prison.  Dkt. No. 18 at 13-15, ¶¶ 47-58.  However, those allegations are not relevant to this action as they do not involve Defendants Payton and Healy.

United States District Court
Northern District of California

United States District Court
Northern District of California

that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted. *See Liberty Lobby*, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Id.* at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. *See T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

United States District Court
Northern District of California

The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id.* at 631.  It is not the task of the district court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party.  *See id.; see, e.g., Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.   First Amendment – Free Exercise of Religion Claim

Plaintiff's allegations are essentially that he missed six Ramadan meals (breakfast and dinner on June 9, 11, and 12) due to Defendants' actions.  Defendants assert that this claim fails as a matter of law because such a brief interruption to a prisoner's religious meals does not violate the Free Exercise Clause.  Dkt. No. 72 at 12.

Prisoners retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citation omitted).  But lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (citation and internal quotation marks omitted).  For a prisoner to establish a free exercise violation, he therefore must show that a prison regulation or official burdened the practice of his religion without any justification reasonably related to legitimate penological interests.  *See Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  A prisoner is not required to objectively show that a central tenet of his faith is burdened by a prison regulation to raise a viable claim under the Free Exercise Clause.  *Id.* at 884-85.  Rather, the sincerity test of whether the prisoner's belief is "sincerely held" and "rooted in religious belief" determines whether the Free Exercise Clause applies.  *Id.* (finding district court impermissibly focused on

United States District Court
Northern District of California

whether consuming Halal meat is required of Muslims as a central tenet of Islam, rather than on whether plaintiff sincerely believed eating kosher meat is consistent with his faith). The prisoner must show that the religious practice at issue satisfies two criteria: (1) the proffered belief must be sincerely held and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (cited with approval in *Shakur*, 514 F.3d at 884).

### 1.  Ramadan Meals

Inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).  Allegations that prison officials refuse to provide a healthy diet conforming to sincere religious beliefs states a cognizable claim under § 1983 of denial of the right to exercise religious practices and beliefs. *See Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) (Jewish inmate claiming denial of kosher diet), *cert. denied*, 510 U.S. 1192 (1994); *McElyea*, 833 F.2d at 198 (same); *Moorish Science Temple, Inc. v. Smith*, 693 F.2d 987, 990 (2d Cir. 1982) (Muslim inmate claiming denial of proper religious diet).  The burden then falls on the prison officials to prove that the burden on plaintiff's exercise of religion was reasonably related to a legitimate penological objective. *See Ashelman v. Wawrzaszek*, 111 F.3d 674, 677-78 (9th Cir. 1997) (applying test from *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987), to determine reasonableness of decision denying Jewish inmate's request for an all-kosher diet).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted).  A substantial burden is one which has "a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id*.

Defendants assert that even if it were assumed that Plaintiff was denied three days' worth of Ramadan meals, such a brief interruption does not violate the Free Exercise

Clause.  Dkt. No. 72 at 12.  They assert that similar to the officer's conduct in *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998), their conduct did not constitute substantial interference to violate the First Amendment.  *Id.* at 12-13.  Defendants also assert that many courts have found that a few missed religious meals do not rise to the level of a constitutional violation.  *Id.* at 13.  Defendants assert that likewise in Plaintiff's case, the temporary disruption in the delivery of religious meals was not significant enough to violate the Constitution.  *Id.*  Plaintiff has filed no opposition to refute Defendants' assertions.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact with respect to Plaintiff's free exercise claim.  *See Celotex Corp.*, 477 U.S. at 323.  Specifically, Plaintiff fails to show that the lack of Ramadan meals for the three days burdened the practice of his religion.  Firstly, there is no allegation in the complaint that he was unable to practice being a Muslim for lack of these meals.  Furthermore, the allegations do not establish that Defendants' actions either coerced Plaintiff into acting contrary to his religion or exerted substantial pressure on him to modify his behavior and violate his religious beliefs.  For example, there is no allegation that the lack of Ramadan meals forced Plaintiff to break his fast involuntarily.  Rather, Plaintiff's allegations indicate that despite the lack of Ramadan meals, he continued to maintain his fast. Although unfortunate, the alleged partial interruption of Plaintiff's Ramadan meals for three days over the course of twenty-eight days (from May 15 through June 12) of fasting did not amount to a violation of his free exercise of religion rights because it was *de minimis* and not a substantial burden on Plaintiff's practice of his religion.  *Accord Smith v. Steiber*, No. 19-cv-00019-WHO (PR), 2019 WL 6771829, at *2 (N.D. Cal. Dec. 12, 2019) (missing two kosher meals did not constitute a burden sufficient to violate plaintiff's First Amendment rights); *Wilson v. Jauregui*, No. 17-cv-04003-CRB (PR), 2019 WL 1559195, at *3 (N.D. Cal. Apr. 10, 2019) (alleged brief and partial interruption of plaintiff's Kosher

meals on three occasions did not amount to a violation of his free exercise rights because it was *de minimis* and not a substantial burden on the practice of his religion); *Ahdom v. Etchebehere*, No. 1:13-cv-01623-DAD-GSA, 2017 WL 8793335, at *1 (E.D. Cal. Dec. 12, 2017) (one-day exclusion from Ramadan meals was *de minimis* and not substantial burden on plaintiff's free exercise rights). *But cf. Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006) (deprivation of Ramadan meals for 24 out of 30 days amounted to substantial burden on plaintiff's free exercise rights).

In response, Plaintiff has filed no opposition showing that there is a genuine issue for trial or identifying any evidence that precludes summary judgment. *Celotex Corp.*, 477 U.S. at 324. Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to this First Amendment claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are entitled to summary judgment on this claim.

### 2. <u>Qualified Immunity</u>

Defendants assert that even if Plaintiff's allegations were true, they are nevertheless entitled to qualified immunity. Dkt. No. 72 at 13-14. Defendants assert that the case law previously discussed demonstrates that it was clearly established that a three-day interruption in Ramadan meals was *not* unlawful. *Id.* at 14. They contend that there is no precedent indicating that Defendants acted unlawfully, much less precedent that "clearly established" that their alleged actions were unlawful. *Id.*

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law;'" defendants can have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S.

335, 341 (1986)).  "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful."  *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).

The plaintiff bears the burden of proving the existence of a "clearly established" right at the time of the allegedly impermissible conduct.  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).  A right is clearly established if it were "sufficiently clear [at the time of the conduct at issue] that every reasonable official would have understood that what he is doing violates that right."  *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).  "The right must be settled law, meaning that it must be clearly established by controlling authority or a robust consensus of cases of persuasive authority."  *Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019).  If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.  *Saucier*, 533 U.S. at 202.

A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *See Pearson v. Callahan*, 555 U.S. 223 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by *Saucier*, 533 U.S. at 194); *Henry A.*, 678 F.3d at 1000 (qualified immunity analysis requiring (1) determining the contours of the clearly established right at the time of the challenged conduct and (2) examining whether a reasonable official would have understood that the challenged conduct violated such right).  The court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case.  *See Pearson*, 555 U.S. at 236 (noting that while the *Saucier* sequence is often appropriate and beneficial, it is no longer mandatory).  "[U]nder either prong, courts

may not resolve genuine disputes of fact in favor of the party seeking summary judgment," and must, as in other cases, view the evidence in the light most favorable to the non-movant. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). For example, regarding the first prong, the threshold question must be: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? *Saucier*, 533 U.S. at 201.

Although the Court has determined that there was no constitutional violation of Plaintiff's rights under the first prong of the qualified immunity test, for completeness, the Court addresses Defendants' arguments under prong two, that the law was not clearly established at the time of the incident. First of all, because he has filed no opposition, Plaintiff has failed to meet his burden of establishing the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti*, 953 F.2d at 523. Furthermore, the body of cases identified above found that the partial interruption of religious meals did not amount to a First Amendment violation. *See supra* at 9-10. Accordingly, even if Plaintiff had clearly demonstrated that he was denied Ramadan meals for three days, Defendants are entitled to qualified immunity because a reasonable officer in their position would not have been on notice of clearly established law that their actions (of failing to provide Ramadan meals for three days) violated the First Amendment. Accordingly, Defendants' motion for summary judgment based on qualified immunity should be granted.

## B.   Eighth Amendment Claim

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious, *Farmer*, 511 U.S. at 834

12

United States District Court
Northern District of California

(citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and (2) the prison official possesses a sufficiently culpable state of mind, *id.* (citing *Wilson*, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation for four days, for example, are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See id.* at 732-733.

### 1.   **Denial of Food**

Adequate food is a basic human need protected by the Eighth Amendment. *See Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998). The Eighth Amendment right to food was clearly established as of at least 2001. *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009). Denial of food service may present a sufficiently serious condition to meet the objective prong of the Eighth Amendment deliberate indifference analysis. *Id.* at 812-13; *see, e.g., id.* at 812 (denial of 16 meals over 23 days was "a sufficiently serious deprivation because food is one of life's basic necessities"); *and id.* at 812 n.1 (denial of 2 meals over 9-week period was not sufficiently serious to meet objective prong of Eighth Amendment deliberate indifference).

Defendants assert that the denial of religious meals does not implicate the Eighth Amendment because being denied religious meals is not cruel and unusual punishment, Plaintiff had the opportunity to eat non-Ramadan meals, and missing three non-consecutive days of meals did not violate the Eighth Amendment. Dkt. No. 72 at 15-18.

Defendants first assert that the Eighth Amendment does not grant prisoners the ability to choose what types of food they receive. *Id.* at 15, citing *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) ("The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically

pleasing."). *See also Monson v. Steward*, No. 2:15-cv-00513-PK, 2018 WL 2882709, at *8 (D. Or. Jul. 6, 2017) ("The denial of a kosher diet simply does not rise to the level of 'unnecessary and wanton infliction of pain.'"); *Hall v. Skolnik*, No. 2:10-cv-00054-JCM, 2010 WL 3703717, at *4 (D. Nev. Sept. 13, 2010) ("The denial of religiously-ordained kosher meals perhaps may violate other constitutional protections, but the failure to serve kosher meals does not also constitute cruel and unusual punishment in violation of the Eighth Amendment."); *Carmichel v. GEO Grp.,* No. 1:12-cv-01913 LJO DLB, 2014 WL 109125, at *3 (E.D. Cal. Jan. 9, 2014), *report and recommendation adopted sub nom. Carmichael v. Aguilar*, No. 1:12-cv-01913 LJO DLB, 2014 WL 711030 (E.D. Cal. Feb. 21, 2014) ("Here, Plaintiff believes that Defendants' denial of a Halal diet constitutes cruel and unusual punishment. He is incorrect.").

Furthermore, Defendants assert that the undisputed evidence shows that Plaintiff could still have eaten regular meals.  Dkt. No. 72 at 15-16.  They point out that on June 8, 2018, Plaintiff ate a regular meal when he felt sick that day.  *Id.*, citing Pl.'s Dep. at 27:13-17.  Defendants assert that Plaintiff cannot allege that he was deprived of food entirely if he chose to continue his fast rather than asking to be let out for regular chow hall.  *Id.*, citing *Jenkins v. Kay*, No. 3:18-cv-05049 BHS JRC, 2019 WL 6972416, at *4 (W.D. Wash. May 20, 2019), *report and recommendation adopted*, No. C18-5049 BHS, 2019 WL 6913480 (W.D. Wash. Dec. 18, 2019) ("This is fatal to plaintiff's Eighth Amendment claim because even assuming that the halal meals were contaminated, plaintiff was not forced to consume the halal meals – rather, he could exercise the option to formally request a change of diet and then receive regular meals."); *Cox v. Glebe*, No. C13-5073 RBL-JRC, 2013 WL 1944524, at *4 (W.D. Wash. Mar. 29, 2013), *report and recommendation adopted*, No. C13-5073 RBL-JRC, 2013 WL 1944581 (W.D. Wash. May 9, 2013) ("Further, it was plaintiff who chose to object to the food being served and he admits to prison staff giving him the chance to sit and eat or leave the dining room. Plaintiff fails to show that any person was deliberately indifferent to a serious need.").  Defendants also

United States District Court
Northern District of California

assert that during deposition, Plaintiff refused to answer counsel's repeated question as to whether he could have gone to the chow hall for regular meals on the days he was allegedly deprived of Ramadan meals.  Dkt. No. 72 at 16-17.  Defendants assert that the only explanation for Plaintiff's evasive answers is that he did not want to admit that he chose not to ask for regular food on the days he missed his religious meals.  *Id.* at 17.  Defendants assert that the Court should therefore infer that Plaintiff could have asked for regular meals, like he did on June 8, but chose not to, which dooms his Eighth Amendment claim.  *Id.*

Lastly, Defendants assert that a temporary interruption in meal service that does not harm the inmate does not violate the Eighth Amendment.  Dkt. No. 72 at 17.  Defendants rely on *Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009), which held that depriving an inmate of 16 meals over 23 days violates the Eighth Amendment but two missed meals on non-consecutive days were "relatively isolated occurrences [that] do not appear to rise to the level of a constitutional violation."  Dkt. No. 72 at 17-18, citing *Foster*, 554 F.3d at 812-13, n. 1.  *See also Talley v. Estill*, No. 222-cv-01381 JADEJY, 2023 WL 2328370, at *4 (D. Dev. Mar. 2, 2023) ("[Allegations that inmate missed two meals on the same day] are not enough to colorably state that Talley experienced a sufficiently extreme deprivation for Eighth Amendment's purposes."); *Garrett v. Gonzalez*, No. 111cv00686SABPC, 2014 WL 12539696, at *3 (E.D. Cal. Mar. 7, 2014), aff'd, 588 F.App'x 692 (9th Cir. 2014) (no Constitutional violation for alleged deprivation of three consecutive meals over 18-hour time period); *Franklin v. Scribner*, No. CIV 07-0438BTMLSP, 2009 WL 703234, at *5 (S.D. Cal. Mar. 16, 2009) ("In Plaintiff's Second Amended Complaint, he alleges that he was denied breakfast 'several times' but alleges no harm as a result of this denial of meals. A few instances of missing a meal does not rise to the level of 'sustained deprivation' found in *Foster*."); *Oded v. Day*, No. 14CV1126 BAS BGS, 2014 WL 2573330, at *2 (S.D. Cal. June 6, 2014) ("It is clear, however, that even the complete denial of single meals on a few occasions is insufficient to support a claim of cruel and unusual

punishment."). Defendants assert that a key fact is whether the alleged deprivation of food harmed the inmate's health. Dkt. No. 72 at 18-19 (citing cases finding lack of harm to inmate's health from missed meals failed to demonstrate Eighth Amendment violation). Defendants contend that Plaintiff only alleges that he had hunger pains and no other physical injury, like loss of weight. *Id.*, citing Pl.'s Dep. at 76:18-77:7. Defendants assert, therefore, that Plaintiff has pled no facts showing an Eighth Amendment violation.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact on this Eighth Amendment claim. *See Celotex Corp.*, 477 U.S. at 323. Even if Plaintiff was denied three days' worth of Ramadan meals, the deprivation does not amount to an Eighth Amendment violation. Firstly, the Ninth Circuit held in *LeMaire* that a temporary diet of Nutraloaf, which exceeds an inmate's daily nutritional requirements, does not violate the Eighth Amendment. *Id. See also Graves v. Arpaio*, 623 F.3d 1043, 1050 (9th Cir. 2010) (per curiam) (8th Amendment requires that pretrial detainees be given food that meets or exceeds the Department of Agriculture's *Dietary Guidelines*); *see, e.g., Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1259 (9th Cir. 2016) (summary judgment properly granted for defendants because plaintiff failed to provide any evidence that the jail's pregnancy diet (which consisted of regular inmate diet plus a prenatal vitamin and an additional 32 ounces of milk per day) was nutritionally insufficient or inedible). These Ninth Circuit cases indicate that the Eighth Amendment requires inmates be provided with adequate food, not specific types of food like religious meals. *See*, *e.g.*, *Keenan v. Hall*, 83 F.3d at 1091.

Secondly, the undisputed evidence shows that Plaintiff was not denied access to adequate food during the alleged timeframe but that he chose not to eat regular meals. When he felt sick on June 8, Plaintiff was able to go for a regular meal and forego fasting. *See supra* at 3. Moreover, he was able to go for regular dinner without first notifying Defendants or other prison staff; he simply told the tier officer that he was going to dinner

and was let out of his cell.  *Id.*  Furthermore, although Plaintiff alleged in the FAC that he was "not let out" of his cell for meals, he refused to confirm this was the case at his deposition.  Rather, Plaintiff repeatedly failed to answer counsel's simple and direct questions as to whether he was denied access to regular meals.  Counsel's questions included the following: "did Payton ever tell you, I'm not going to let you eat the regular meals either?"; "did Payton prevent you from eating entirely or did she just prevent you from eating Ramadan meals?"; "did anyone say that you were forbidden from eating regular chow hall food on June 11 or June 12?"; "did you ever ask Ms. Healy or Payton to let you out of your cell so you could go eat regular meals in the chow hall?"; "did you ask to go get a regular meal?"; "did you ever say… can you let me out so I can go get some food?"  Pl.'s Dep. at 67:2-13, 66:24-67:1, 63:10-13, 64:13-16, 65:15-22, 68:7-10, 68:18-22, 69:5-8, 70:7-11.  Plaintiff repeatedly answered, "I don't understand your question," "I don't know how to answer that," or "I'm not sure.  *Id.*  Plaintiff has filed no opposition providing any explanation for his evasive answers at the deposition which contradict his allegations in the FAC.

Lastly, Plaintiff's deprivation of six meals or so over the course of twenty-eight days (from May 15 through June 12) does not rise to the level of "sustained deprivation" in *Foster*, 554 F.3d at 812, which found the deprivation of 16 meals over the course of 23 days was sufficiently serious to satisfy the objective prong of an Eighth Amendment claim.  Rather, in Plaintiff's case, he was denied far fewer meals over a longer period of time than the inmate in *Foster*.  Furthermore, the fact that Plaintiff suffered "hunger pains," and no other physical injuries, does not establish that he suffered any harm to his health to amount to a serious deprivation.  *See e.g., Mendiola-Martinez*, 836 F.3d at 1243 (inmate's statement that the diet left her "hungry" would not alone establish an objectively serious condition).  Ninth Circuit precedent and the caselaw of our sister courts establish that the few instances of missed meals in Plaintiff's case does not rise to the level of "sustained deprivation" found in *Foster*, 554 F.3d at 814.

Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to this Eighth Amendment claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are entitled to summary judgment on this claim.

## 2.     Qualified Immunity

Defendants also assert that they are entitled to qualified immunity on this claim because it was not clearly established that denying Plaintiff Ramadan meals for three days violated the Eighth Amendment. Dkt. No. 72 at 19. If Plaintiff had any right at all, it was under the First Amendment. *Id.*

Although there is no constitutional violation of Plaintiff's rights, the Court again addresses Defendants' arguments under prong two, that the law was not clearly established at the time of the incident. *See Pearson*, 555 U.S. 223. Because he has filed no opposition, Plaintiff has failed to meet his burden of establishing the existence of a "clearly established" right at the time of the allegedly impermissible conduct. *Maraziti*, 953 F.2d at 523. Furthermore, the body of cases discussed above establish that the temporary interruption in meal service does not violate the Eighth Amendment. *See supra* at 13-16. Accordingly, even if Plaintiff had clearly demonstrated that he was unlawfully denied Ramadan meals for three non-consecutive days, Defendants are entitled to qualified immunity because a reasonable officer in their position would not have been on notice of clearly established law that their actions violated the Eighth Amendment.

Plaintiff has filed no opposition showing that there is a genuine issue for trial or identifying any evidence that precludes summary judgment. *Celotex Corp.*, 477 U.S. at 324. Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to this Eighth Amendment claim. *See Celotex Corp.*, 477 U.S. at 323. Accordingly, Defendants are entitled to summary judgment on this claim.

///

### C.     Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects individuals against governmental deprivations of "life, liberty or property," as those words have been interpreted and given meaning over the life of our republic, without due process of law. *Board of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir. 1995).

A court presented with a procedural due process claim by a prisoner should first ask whether the alleged deprivation is one so severe that it implicates the Due Process Clause itself or one less severe that implicates an interest created by state statute or regulation.  If it implicates neither, no procedural due process claim is stated.  If it implicates the Clause itself, the court must determine what process is due.  Next, the court must ask whether the deprivation is one of "real substance," *see, e.g.*, *Jones v. Moran*, 900 F. Supp. 1267, 1273-74 (N.D. Cal. 1995) (Wilken, J.) (adopting Justice Breyer's two-prong analysis of *Sandin v. Conner*, 515 U.S. 472 (1995), majority opinion).  Generally, "real substance" will be limited to freedom from (1) a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, or (2) state action that "will inevitably affect the duration of [a] sentence," *id.* at 487.  Only if the answer is yes to both prongs of this inquiry does the state statutory provision create a liberty interest entitled to procedural due process.  *See, e.g., Myron v. Terhune*, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for California Level IV prison rather than Level III prison not shown to be an atypical and significant hardship; refusal to allow prisoner to publish and distribute an inmate publication not an atypical and significant deprivation); *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (violation of jail regulation that provides for inmates to be present when their legal papers are searched does not involve dramatic departure from basic conditions of incarceration, even for pretrial detainees, sufficient to create liberty interest).

Defendants assert that Plaintiff's allegation that he missed a few days' worth of

religious meals is not significant enough to implicate the due process clause.  Dkt. No. 72 at 20.  Defendants also assert that they are entitled to qualified immunity because they are aware of no case law establishing that withholding a few days' worth of religious meals creates a due process violation.  *Id.*

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Defendants have met their burden of demonstrating the absence of a genuine issue of material fact on this due process claim.  *See Celotex Corp.*, 477 U.S. at 323.  Even if Plaintiff was denied three days' worth of Ramadan meals, the deprivation is not so severe that it implicates the Due Process Clause itself as it does not involve the deprivation of "life, liberty or property," nor does it implicate an interest created by state statute or regulation.  Since it implicates neither, no procedural due process claim is stated.

Even if it could be said that due process was implicated, the deprivation is not one of "real substance" under *Sandin*, 515 U.S. at 484.  The numerous case law discussed throughout this order indicate that missing meals, religious or otherwise, is not an "atypical and significant hardship" on inmates in relation to the ordinary incidents of prison life.  *See supra* at 9-10, 14, 15-16.  Nor can it be said that the deprivation of religious meals will "inevitably affect" Plaintiff's sentence.

Plaintiff has filed no opposition showing that there is a genuine issue for trial or identifying any evidence that precludes summary judgment.  *Celotex Corp.*, 477 U.S. at 324.  Based on the foregoing, the Court finds summary judgment is appropriate because there are no genuine issues of material facts with respect to this due process claim.  *See Celotex Corp.*, 477 U.S. at 323.  Accordingly, Defendants are entitled to summary judgment on this claim.

Because there is no constitutional violation, the Court need not address Defendants' qualified immunity argument on this claim.

**D.     State Law Claims**

Defendants assert that the Court must dismiss any state-law claims because Plaintiff

failed to plead any facts showing that he complied with the California Government Claims Act's presentation requirement.  Dkt. No. 72 at 14.  Defendants assert that the evidence available to them indicates that Plaintiff never filed a proper claim with the State pertaining to any of the claims in this case.  Tartaglio Decl., Ex. B (Senior Legal Analyst's explanation of her search of the database of the Government Claims Unit); Dkt. No. 72-1 at 38.

The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim Compensation and Government Claims Board ("Board") before he may file an action for damages against a California governmental entity or employee "for death or for injury to person or to personal property."  Cal. Gov't Code § 911.2; *see* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2.  The Government Claims Act has strict time limits for filing such a claim with the Board and for filing an action in court after the rejection of such a claim.  A claimant must present his claim to the Board within six months of the accrual of the cause of action.  *See* Cal. Gov't Code § 911.2.  Additionally, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board.  *See* Cal. Gov't Code § 945.6(a)(1).  Timely claim presentation is "a condition precedent to plaintiff's maintaining an action against [a state employee or entity] defendant."  *California v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1240 (Cal. 2004).  The failure to include the necessary allegations about claim presentation makes the complaint subject to attack for failure to state a cause of action.  *Id.*

The FAC does not allege that Plaintiff complied with the claim presentation requirement.  *See generally* Dkt. No. 18.  Furthermore, the undisputed evidence presented by Defendants indicates that Plaintiff did not file any claim with the State regarding the state law claims in this action, *i.e.*, intentional infliction of emotional distress and negligent

United States District Court
Northern District of California

hiring/training/supervision.  Rather, the only claims he filed with the State involved loss of his property, failure to protect from an attack, and trashing of his property.  Tartaglio Decl., Exs. C, D, E; Dkt. No. 72-1 at 40-41, 49-50, 57.  Plaintiff has filed no opposition to dispute this evidence.  Nor could Plaintiff correct this deficiency since any claim filed at this time would clearly be beyond the six months provided under the Tort Claims Act and would therefore be untimely.  *See* Cal. Gov't Code § 911.2.  Accordingly, the state law claims must be dismissed for failure to state a cause of action.

The Court need not address Defendants' remaining arguments regarding the state law claims.  Dkt. No. 72 at 22-23.

## CONCLUSION

For the reasons stated above, Defendants M. Payton and Healy's motion for summary judgment is **GRANTED**.  Dkt. No. 72.  The First Amendment, Eighth Amendment, and due process claims against them are **DISMISSED with prejudice**.

Defendants' motion is also granted with respect to the state law claims, which are **DISMISSED with prejudice** for failure to comply with the California Government Claims Act.

This order terminates Docket No. 72.

**IT IS SO ORDERED.**

Dated:  ___September 25, 2024____

BETH LABSON FREEMAN
United States District Judge

Order Granting MSJ
PRO-SE\BLF\CR.20\03086Khan_grant-MSJ

United States District Court
Northern District of California